UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERNEST McARTHUR FELDER                      CIVIL ACTION

VERSUS                                       NUMBER: 10-4422

SHERIFF DANIEL EDWARDS, ET AL.               SECTION: "C"(5)

**<u>ORDER AND REASONS</u>**

Presently before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.Pro., plaintiff's opposition thereto, and defendants' supplemental memorandum in support of their motion. (Rec. docs. 30, 34, 42). This case is before the Court upon the consent of the parties under 28 U.S.C. §636(c). (Rec. doc. 26). For the reasons that follow, it is ordered that defendants' motion is granted and that plaintiff's federal claims are dismissed with prejudice and that his state law claims are dismissed without prejudice.

At the time that he authored his complaint, plaintiff was an inmate of the Tangipahoa Parish Jail ("TPJ"), Amite, Louisiana.

(Rec. doc. 1, p. 3). Named as defendants in plaintiff's original pro se complaint were Sheriff Daniel Edwards, Warden Joyce Jackson, Assistant Warden Brandon Pinion, Administration Head Stewart Murphy, Nurse Shawn Sweeney, and an unidentified new deputy nurse at TPJ. (Rec. doc. 1, pp. 1, 4). In his complaint which was filed pursuant to 42 U.S.C. §1983, plaintiff stated that defendant Edwards had been named as a defendant because he "is [the] Sheriff and is in charge"; that defendant Jackson had not responded to an Administrative Remedy Procedure ("ARP") grievance that plaintiff had initiated; that defendant Pinion had similarly not responded to the grievance; that defendant Sweeney had denied him medical care for treatment of a hernia and had not sent him to the hospital; that defendant Murphy had also not responded to his medical care-related complaint; and, that the unnamed new nurse's request for medical care had been overridden by defendant Sweeney. (Rec. doc. 1, p. 5). Plaintiff's application to file this matter in forma pauperis was granted by the Court on December 20, 2010. (Rec. doc. 3). By that time, plaintiff had been released from TPJ on November 12, 2010. (Rec. doc. 4).

After this case had been placed on the call docket due to a lack of service on the named defendants, plaintiff filed a written response explaining the reasons for the delay in prosecuting this matter. (Rec. doc. 7). Included within that response were medical

records indicating that plaintiff had undergone right inguinal hernia surgery at the Lallie Kemp Regional Medical Center on March 28, 2011. (Id. at pp. 2-3). In light of that response, the Court granted plaintiff additional time within which to effect service upon the defendants. (Rec. doc. 8). In due course, defendants filed an answer to plaintiff's complaint, the parties consented to have the case tried before a Magistrate Judge under §636(c), and a scheduling conference was held at which a trial, pre-trial conference, and attendant cut-off dates were established. (Rec. docs. 18, 26, 27). Soon thereafter, counsel enrolled on plaintiff's behalf. (Rec. docs. 28, 29).

On February 2, 2012, defendants filed their motion to dismiss, arguing that plaintiff had failed to allege the existence of a policy or custom on the part of the Sheriff, that the remaining defendants lacked final decisionmaking authority under §1983, and that plaintiff could not otherwise show that the defendants had been deliberately indifferent to his serious medical needs. (Rec. doc. 30). Through counsel, plaintiff subsequently filed a response to defendants' motion to dismiss in which he conceded that there was no official policy on the Sheriff's part which led to his injuries but asking that the Sheriff be maintained in this suit in his individual capacity and for possible vicarious responsibility on any state law claims. (Rec. doc. 34, p. 2). Plaintiff further

3

asserted that the remaining defendants did indeed have final decisionmaking authority under Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99 (1986) and he thus requested an opportunity to amend his complaint to better flesh out that position and to set forth a more clear and definite statement on an Eighth Amendment claim for deliberate indifference to his medical needs. (Id. at pp. 2-3). Plaintiff also separately requested a status conference to discuss the deadlines that had been established in this case, including the deadline for amendments to pleadings which by that time had expired. (Rec. doc. 33). That request was taken up during oral argument on defendants' motion, at which time plaintiff was given two weeks to amend his complaint with defendants to supplement their motion to dismiss within two weeks thereafter. (Rec. docs. 35, 36). That has now been accomplished. (Rec. docs. 38, 42).

After describing the nature of this action, providing a statement of jurisdiction, and identifying the parties, the totality of the facts set forth in plaintiff's supplemental and amended complaint[1]/ are as follows:

6.

---

[1]/ Plaintiff's supplemental and amended complaint supersedes his original complaint. Rossignol v. Tillman, No. 10-CV-3044, 2011 WL 1193017 at *2 (E.D. La. March 25, 2011).

4

> On or about October 27, 2010, Plaintiff Felder was incarcerated at the Tangipahoa Parish Jail.
>
> 7.
>
> Prior to his incarceration, Felder did not have any "knots" in his groin region.
>
> 8.
>
> During his incarceration, Felder was assigned to kitchen duty. While assigned, he was required to lift heavy objects. On one occasion, he felt a pain in his groin region accompanied by a "knot" in that area.
>
> 9.
>
> From the time he discovered the "knot" until his release from jail, plaintiff repeatedly requested medical attention. All of plaintiff's requests were denied by Defendants Edwards, Jackson, Pinion, Murphy, Sweeny and Nurse X. After making numerous requests for medical attention, plaintiff was removed from kitchen duty. It was not until plaintiff's release from Tangipahoa Parish Jail that plaintiff took himself to Lallie Kemp Regional Medical Center in Independence, Louisiana. It was determined that the "knot" was a hernia. Surgery was performed on March 29, 2011.

(Rec. doc. 38, p. 3).

Following this recitation of facts, plaintiff sets forth six causes of action which purportedly arise from the matters he had pled. First, he asserts a Fourteenth Amendment denial of due process as he ".... was denied a meaningful opportunity to be heard regarding his request for medical treatment." (Rec. doc. 38, p. 4). Second, plaintiff alleges a substantive due process violation

5

resulting from "conscience-shocking" governmental conduct "... because defendants never afforded Plaintiff an opportunity to view any documents upon which he purportedly based his ultimate ruling." (Id. at p. 5). The remaining four causes of action arise under state law for alleged violations of Article I, §2 of the Louisiana Constitution, intentional infliction of emotional distress, negligence, and failure to adequately train/supervise. (Id. at pp. 5-7). Defendants have since responded to plaintiff's amended pleading by way of a supplemental memorandum in support of their motion to dismiss in which they maintain that plaintiff's allegations still fail to state a claim upon which relief can be granted. (Rec. doc. 42).

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). However, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949 (2009). The Court must thus identify pleadings that are conclusory and are not entitled to the assumption of truth and legal conclusions must be supported by the factual allegations that are pled. Id. at 677-78, 129 S.Ct. at 1949. To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. While a complaint need not contain detailed factual allegations, it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. Id. Indeed, a §1983 complaint must plead specific facts and allege a cognizable constitutional violation in order to avoid dismissal for failure to state a claim. Mills v. Criminal District Court No. 3, 837 F.2d 677, 678 (5th Cir. 1988).

Measured against these standards, the two federal causes of action set forth in plaintiff's supplemental and amended complaint fail to state a claim upon which relief can be granted. With respect to any §1983 claim against the Sheriff in his official capacity, plaintiff readily conceded in his opposition to defendants' motion "... that there was no official policy that the Sheriff was following that led to his injuries." (Rec. doc. 34, p. 2). Plaintiff thus asked that the Sheriff be maintained in this suit in his individual capacity and for vicarious liability purposes on any claims arising under state law. (Id.). Although plaintiff generally alleges in his amended complaint that the Sheriff, as well as all of the other defendants, "... acted under the laws, statues (sic), ordinances, regulations, policies, customs and usages of the State of Louisiana", nowhere does he identify any

7

official custom or policy. With respect to any §1983 claim against the Sheriff in his individual capacity, the law is clear that §1983 does not create supervisory or respondeat superior liability and that such officials may be liable only for implementing a policy that is itself a repudiation of constitutional rights and is the moving force behind the constitutional violation. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002)(quoting Grandstaff v. City of Borger, 767 F.2d 161, 169, 170 (5th Cir. 1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369 (1987)(footnote omitted)). Accordingly, in order to survive a Rule 12(b)(6) motion to dismiss §1983 claims brought against supervisors in their individual capacities, a plaintiff must plead specific facts identifying specific policies or explaining how they permitted or possibly encouraged the allegedly unlawful conduct. Id. That showing has not been made with respect to the Sheriff here. While the Court harbors significant doubt as to whether the allegations in plaintiff's amended complaint against the other named supervisory officials, namely, the Warden, Assistant Warden, and the Administration Head, are similarly deficient, additional reasons exist for the dismissal of plaintiff's federal claims as to them.

The facts recited in plaintiff's amended complaint center on a denial of needed medical care for treatment of a hernia. However, the federal causes of action in his amended pleading are

not tailored to those facts but are instead presented as broad due process challenges regarding the denial of a meaningful opportunity to be heard regarding his request for medical treatment and the denial of "an opportunity to view any documents upon which he purportedly based his ultimate ruling." Neither the specific defendant to whom plaintiff refers nor the "ultimate ruling" at issue are identified. Simply put, the federal causes of action set forth in plaintiff's amended pleading find little support in the facts he has pled. The Court also notes that attached to plaintiff's original complaint was a copy of a grievance he had initiated on October 27, 2010 pursuant to TPJ's Administrative Remedy Procedure. (Rec. doc. 1, pp. 7-9).[2]/ To the extent that plaintiff alleges that this grievance was not properly responded to, such unresponsiveness is not actionable under §1983 as inmates have no constitutional right to an adequate effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Propes v. Mays, 169 Fed.Appx. 183, 184-85 (5th Cir. 2006), Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Tyson v. Tanner, No. 08-CV-4599, 2009 WL 2883056 at *5 (E.D. La. Aug. 25, 2009).

---

[2]/ Because the grievance was attached to plaintiff's original complaint as an exhibit it became a part of the pleading for all purposes. Rule 10(c), Fed.R.Civ.Pro.

Moreover, even if plaintiff's amended complaint can be read as presenting a cognizable Fourteenth/Eighth Amendment claim for needed medical care,[3]/ dismissal under Rule 12(b)(6) would nevertheless be appropriate. In order to prevail on such a claim, a prisoner must demonstrate that prison officials were deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain. Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)(internal quotation omitted). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. at 1970, 1979 91994). Such a showing requires the inmate to allege that prison "officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Domino

---

[3]/ Regardless of whether plaintiff was a pretrial detainee or a convicted prisoner during the relevant time period, the standard governing the provision of medical care is the same. Hare v. City of Corinth, 74 F.3d 633, 648 (5th Cir. 1996).

10

v. Tex. Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)(quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Mere allegations of medical malpractice are insufficient to establish deliberate indifference to an inmate's serious medical needs. Id. And where a §1983 claim is premised on a delay in the provision of medical care, a prisoner must also allege that he suffered substantial harm as a result of the delay. Richard v. Martin, 390 Fed.Appx. 323, 325 (5th Cir. 2010)(citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)); Taylor v. Bexar County, No. 10-CA-045, 2011 WL 759549 at *4 (W.D. Tex. Feb. 23, 2011).

Plaintiff does not allege in his amended complaint that he suffered substantial harm as a result of any delay in providing him with needed medical care, thus making a Rule 12(b)(6) dismissal of his federal claims appropriate. Richard, 390 Fed.Appx. at 325. Furthermore, based upon a review of the exhibits attached to plaintiff's complaint and those that were appended to defendants' motion without objection, the record belies any claim of deliberate indifference. Plaintiff was arrested on September 1, 2010 and was housed at TPJ commencing on September 2, 2010. (Rec. docs. 1, p. 3; 30-2). On September 16, 2010, plaintiff completed a "Request for Medical Attention" form in which he complained of a hernia on his pelvis that was painful and was increasing in size. (Rec. doc. 30-

11

3, p. 1). Plaintiff was seen by the prison doctor the following day who rendered a diagnosis of a "pre-existing reducable" hernia and ordered that plaintiff's condition simply be observed. (Id.). On that same day, plaintiff was "moved to kitchen work." (Rec. doc. 42-1, p. 1).

On October 5, 2010, plaintiff was seen again by the prison doctor for hernia-related complaints. (Rec. doc. 30-3, p. 2). On that treatment record the doctor noted that plaintiff suffered from a "pre-existing reducable" hernia and that he at that time "work[ed] in [the] kitchen". (Id.). The diagnosis was a pre-existing reducable hernia and the doctor ordered that plaintiff be removed from kitchen duty and placed on bed rest. (Id.). On October 21, 2010, plaintiff was transferred to a new jail cell. (Rec. doc. 42-1, p. 2). Shortly thereafter, on October 24, 2010, plaintiff was "moved off trustee status ... [with] absolutely no physical work detail per Sean." (Rec. doc. 42-1, p. 3).

According to the ARP grievance form dated October 27, 2010 that was attached to plaintiff's original complaint, on that same date he had been involved in an incident while in the kitchen for which he sought medical attention for his hernia. (Rec. doc. 1, p. 7). The very next day, plaintiff was seen by the prison doctor a third time in connection with complaints of hernia-related discomfort. (Rec. doc. 30-3, p. 3). Objective findings were a pre-

existing, reducable right inguinal hernia and the diagnosis was a history of right inguinal hernia. (Id.).  The examining physician ordered that plaintiff be kept off work detail and he additionally prescribed plaintiff Ultram for pain relief. (Id. at pp. 3-4). In his original complaint, plaintiff acknowledged that such medication had indeed been dispensed. (Rec. doc. 1, pp. 8-9).  Plaintiff was subsequently released from TPJ on November 12, 2010. (Rec. docs. 4; 30-2, p. 1).  On December 22, 2010, plaintiff was seen at the Lallie Kemp Medical Center for complaints of a right inguinal hernia for the previous three to four months. (Rec. doc. 42-1, p. 4).  Upon physical examination, a small raised tender area to the right groin was palpated. (Id.).  Plaintiff ultimately underwent right inguinal hernia surgery on March 28, 2011. (Rec. doc. 7, pp. 2-3).

Contrary to the allegations in plaintiff's amended complaint that all of his requests for medical attention were repeatedly denied by all of the defendants, the prison records noted above prove otherwise.  Based upon a review of those records, it appears that plaintiff's hernia pre-dated his incarceration at TPJ and that he was provided medical care at the jail for it on no less than three occasions. "The determination of whether or not to provide additional medical treatment 'is a classic example of a matter for medical judgment.'" Taylor, 2011 WL 759549 at *4 (quoting Gobert,

463 F.3d at 346). Plaintiff's disagreement regarding the delay or type of treatment he was provided is insufficient to prevail on a §1983 claim. Id. "Experiencing 'occasional delays in obtaining' medical treatment is insufficient to prove a refusal of providing medical care when the inmate's ... medical records demonstrate that he received treatment." Id. (quoting Gobert, 463 F.3d 346); see also Richard, 390 Fed.Appx. at 324-25. In light of the authorities cited above, plaintiff's federal claims against the defendants are dismissed with prejudice.

With the dismissal of the federal claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. §1367(c)(3); Sibley v. Lemaire, 184 F.3d 481, 490 (5th Cir. 1999). That being the case, it is ordered that plaintiff's state law claims are dismissed without prejudice. Judgment will be entered accordingly.

New Orleans, Louisiana, this 10th day of May, 2012.

ALMA L. CHASEZ<br>
UNITED STATES MAGISTRATE JUDGE